**Pamie MOORE, III, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1138–85.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 4, 1987.

Patrick R. Ganne, Sally Ray, Austin, for appellant.

Ronald Earle, Dist. Atty., and Terrence Keel, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

---

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

On direct appeal, the Third Court of Appeals (Austin), in an unpublished opinion, after concluding that the evidence was insufficient to support the jury's implicit finding that the complainant sustained serious bodily injury, reversed the trial court's judgment of conviction. See *Moore v. State*, (Tex.App.–3rd, No. 3-84-336-CR, October 2, 1985). The court overruled the State's motion for rehearing without written comment or opinion.

The State then filed its petition for discretionary review, challenging the holding of the court of appeals that the evidence was insufficient to sustain the jury's implicit finding that the complainant had sustained serious bodily injury, after which, because at least four members of this Court did not vote to grant the State's petition, this Court refused the petition. See Rule 202(*l*), Rules of Appellate Procedure. The State then filed a motion for rehearing, after which, because at least five members of this Court were of the opinion that the State's motion should be granted, this Court granted the State's motion for rehearing. See Rule 230(c), Rules of Appellate Procedure.

"The relevant question [before this Court, which was the same question before the court of appeals,] is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Of course, that standard must be applied not only to the admitted evidence but also to a correct charge that corresponds to the allegations of the indictment. See *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1983). Also see *Boozer v. State*, 717 S.W.2d 608 (Tex.Cr.App.1984); *Ortega v. State*, 668 S.W.2d 701 (Tex.Cr.App.1984).

In this instance, Pamie Moore, III, hereinafter appellant, was accused and convicted of committing the offense of aggravated assault by causing serious bodily injury to Darrel E. Blackmon, hereinafter the complainant.

In pertinent part, the indictment alleges that appellant "did then and there unlawfully, intentionally and knowingly cause serious bodily injury to Darrel E. Blackmon, the victim, by stabbing the victim with a knife."

In the only "application paragraph" that the jury was given, the jury was instructed as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Pamie Moore, III, on or about the 11th day of July, 1984, in the County of Travis, and State of Texas, as alleged in the indictment, did then and there unlawfully, intentionally and knowingly cause serious bodily injury to Darrel E. Blackmon, the victim, by stabbing the victim with a knife, you will find the defendant guilty of the offense of aggravated assault and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

The jury returned a verdict finding appellant "guilty of the offense of aggravated assault, as alleged in the indictment." The trial judge assessed his punishment, enhanced by one prior felony conviction, at 15 years and one day confinement in the Department of Corrections. No fine was assessed.

One of the ways that a person may commit the offense of aggravated assault is if he commits the offense of assault and causes serious bodily injury to another. See V.T.C.A., Penal Code, § 22.02(a)(1). One of the ways that a person may commit the offense of assault is if he intentionally, knowingly, or recklessly causes bodily injury to another. See V.T.C.A., Penal Code, § 22.01(a)(1).

"Serious bodily injury" is defined in the Penal Code to mean the following: "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or

impairment of the function of any bodily member or organ." V.T.C.A., Penal Code, § 1.07(a)(34). "Bodily injury" is defined in the Penal Code to mean the following: "physical pain, illness, or any impairment of physical condition." By virtue of the fact that the Penal Code provides a different definition for "bodily injury" from "serious bodily injury", though often a matter of degree, we must presume that the Legislature intended that there be a meaningful difference or distinction between "bodily injury" and "serious bodily injury." Understandably, this means that where the issue is raised, the issue must be determined on an ad hoc basis.

During the State's case in chief, the following was established: The twenty-one year old previously convicted appellant assaulted the then unemployed, inferentially from this record for almost one year, twenty year old complainant by hitting him in the face and stabbing him with a knife. The assault occurred in the neighborhood where they lived in Austin. Appellant and the complainant were shown to have known one another for approximately three or four years. No evidence was then adduced that the complainant and appellant had ever previously had any difficulties. Appellant, in the presence of his brother, Michael, assaulted the complainant around 9 or 10:00 p.m. on the day in question because appellant's girlfriend, Patsy, told him, the appellant, that the complainant had earlier told her that he did not care whether she liked him or not, "So what?", after she had told the complainant, "Darrell, I don't like you." After being assaulted by appellant, the complainant ran to his home, which was located approximately forty feet away, and went inside his home where he laid down on his mother's new couch. The complainant thereafter, when he raised up from the couch, became aware that he had been stabbed in the back. It is not apparent just exactly when he became aware that his nose had been cut, although

there was later testimony that he was holding his hand to his nose when he ran to his home. When the complainant saw blood on his mother's new couch, this enabled him to conclude or infer that his back was then bleeding. He also then discovered that the nares of his nose had been punctured. The police were summoned. After the police convinced the complainant to seek treatment, an ambulance was summoned and the complainant was taken to the emergency room of Brackenridge Hospital where he was administered treatment. The complainant, however, was not hospitalized. During his stay at Brackenridge, which consumed approximately three total hours, the complainant was treated for the wounds to his nose and back and released, after which he apparently returned to his home. Although the complainant's mother testified that, after the complainant returned home from the hospital, "we had to take him backwards and forwards to the doctor every day", there is no other evidence or testimony in this record that might reflect or indicate that the complainant was ever seen, much less treated, by another physician for the wounds that he had sustained.

Dr. Edward Allen Lewis testified that he was assigned to the emergency room at Brackenridge Hospital when the complainant came there for treatment for his wounds. Lewis testified that after he had completed his initial examination, he concluded that the complainant had sustained two wounds to his body: "One was an incisional-type wound in the—about the center of his back and another was a laceration to his nose." Photographs of these wounds were admitted into evidence without objection.[1] Lewis testified that on many occasions in the past he had treated worse wounds than the complainant had sustained.

As to the wound to the back of the complainant, Lewis testified that "It was a incisional-type wound that was on the left

---

1. Where the issue on appeal is such as here, whether the victim sustained serious bodily injury, and the State relies upon photographic evidence to show the wound or wounds, a duplicate original of the photographs should always be included in the record of appeal. The copies of the photographs that are in this record are absolutely of no benefit or assistance to this Court in resolving the issue whether the complainant sustained serious bodily injury.

aspect of his back, about equal to his shoulder blades. It was about an inch and a half long by one inch deep, approximately, and inside it had a—it tunneled a little bit slightly towards the spine, underneath the skin." Lewis also observed another wound to the back which appeared to him to be "a superficial scraping type wound, maybe 12 to 15 inches long, that went ... around his back towards his side on the left side." In Lewis' opinion, the wounds were inflicted "probably by a single slash" that could have been done by a knife. As expected, Lewis testified that if the wound to the back where the bleeding came from had not been treated "it carried the chance of becoming infected." In order to drain blood from "a blind pocket", Lewis testified that a sterile rubber-type drain was inserted into the blind pocket. Eight to ten stitches were used to suture the wound. Although Lewis testified that if untreated there was the chance that the wound to the back of the complainant would become infected, he also testified that "I don't think [the complainant] was in any risk of serious damage." However, Lewis was quick to point out that "any type of stab wound to the back carries a potential risk of serious harm and death."

As to the wound to the complainant's nose, Lewis testified that "it was a stellate, sort of star-shaped type laceration to the nares of the nose, going all the way through the nares." Treatment was administered to this wound, which consisted of "a two-layer closure, stitches inside and outside."

On cross-examination, Lewis reaffirmed that the wounds the complainant sustained to his back were not the type of bodily injuries that would create a substantial risk of death. Lewis also testified that the wound to the back would not cause a protracted loss or impairment of the function of any bodily member or organ. Lewis, however, did testify that the injuries the complainant sustained to his back would cause physical pain. Although Lewis did not detail the size of the scar that would exist on the complainant's back in the future, he did testify that a scar would exist but he did not think it would be significant.

Lewis was not asked what significance, if any, the scar that would exist on the complainant's nose might have on the complainant in the future.

After the State presented its case in chief, and rested, appellant moved for an instructed verdict, inter alia, on the ground that the State had failed to establish beyond a reasonable doubt that the complainant had sustained "serious bodily injury".

During arguments on the motion, the trial judge commented: "Well, I'll tell you, [the State's prosecutor], that I personally don't think that on the evidence that is—that is before the jury at this time, that serious bodily injury has been proven."

Without ruling on the motion, the trial judge granted the State's motion to reopen.

Lewis was recalled to testify. Lewis testified: "The injury is not—is not any more serious that I made it out yesterday. The injury this patient received and the treatment that he got, it in itself—you know, the way we treated it was not that serious." Lewis again testified that the injury the complainant had sustained "did not create a substantial risk of death"; "did not cause death"; "did not cause a serious permanent disfigurement"; and, as far as the "protracted loss or impairment of the function of any bodily member or organ", Lewis testified that he advised the complainant "not to do anything for seven days." After being given the Penal Code definition for "bodily injury", Lewis testified that he accepted "that defintion as being descriptive of the type of wound, injuries that he saw." When given the Penal Code definition for "serious bodily injury", Lewis testified that that description was not applicable to the type of wound or injuries that the complainant had sustained. We find that a clear reading of Lewis' previous testimony and his testimony on recall leads us to conclude that Lewis was correct: his latter testimony did not significantly change from what he had previously given.

After Lewis testified, the State again rested after which one of appellant's trial

attorneys reurged the appellant's motion for an instructed verdict, see *ante*, which was overruled. During his argument on the motion, counsel made the point that if in all cases of bodily injury the issue is governed by speculation or possibility, then "we might as well throw away the distinction between serious bodily injury and bodily injury". The trial judge responded: "Let me say to you that I think perhaps the Defense portion is—point is very well-taken, but if it is well-taken, it's going to be something the Court of Criminal Appeals is going to have to decide, so I'll deny the motion for directed verdict at this time."

After the trial judge ruled, the defense then put on its case. The major difference between what the State had presented and what the defense presented is that when the defense witness Michael Moore testified he made a judicial confession of guilt that he and he alone had committed the offense of aggravated assault on the complainant by hitting and stabbing the complainant with "a little knife", because the complainant had previously "set him up" to be shot and killed and he was in fact shot at an unknown time and place by some unknown person.

Appellant himself testified. Appellant testified that at the time the complainant was stabbed he was not mobile because he had just recently fractured an ankle playing football and the ankle had a "splint" on it. Appellant denied assaulting the complainant and testified that if anyone assaulted the complainant it must have been his brother Michael.

The record indicates that Michael Moore was arrested during the noon hour after appellant testified. The prosecuting attorney testified that he had nothing whatsoever to do with the arrest.

At this time, both sides rested. Appellant's trial attorney renewed his motion for instructed verdict, inter alia, that the evidence was insufficient to sustain a finding that the complainant had sustained *serious bodily injury*. The trial judge denied the motion. Thereafter, the jury returned a general verdict finding appellant guilty of committing the offense of aggravated assault, "as alleged in the indictment."

The decision of the jury whether to believe or disbelieve the complainant, appellant's brother, or the appellant, was not challenged by appellant on appeal. Nor was the decision that the jury, by its verdict, obviously disbelieved the testimony of appellant and his brother that appellant did not assault the complainant but that Michael, if anyone, was the one who assaulted the complainant.

What was challenged on appeal by appellant was the sufficiency of the evidence to support the jury's implicit finding that the complainant sustained *serious bodily injury*. The court of appeals agreed with appellant and ruled as a matter of law that any rational trier of fact could not have found the evidence sufficient to establish beyond a reasonable doubt that the complainant sustained serious bodily injury, and reversed.

Given the record before us, we are compelled to agree with the court of appeals' implicit finding that only an irrational, and not a rational, trier of fact could have found that the complainant sustained serious bodily injury, as that term is defined in the Penal Code.

Given the Penal Code definition for the term "serious bodily injury", see *ante*, because the complainant in this cause did not die from the wounds inflicted, and because there is no evidence that might support the finding that the inflicted wounds either to the back or the nose caused the complainant serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ, the only question left to be answered is whether the complainant's wounds created a substantial risk of death. Because there is no evidence in this record that might support the finding that the wound to the nose created a substantial risk of death, we will limit our concerns to the stab wound to the complainant's back that necessitated minor surgery.

By our above statements, we do not overlook the fact that the State is also arguing that the evidence is sufficient to support

the jury's implicit finding that the complainant suffered "serious bodily injury" through "protracted loss or impairment of the function of a bodily member or organ." We have considered the State's contention and find that it is wholly without merit. We find that, given the common meaning of the word "protracted", the complainant's mother's testimony, on which the State relies, that the complainant was bedridden and that it was at least a week "before he could really go out and see people", does not even come close to establishing that the injury the complainant sustained to his back was either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending. See Burton, *Legal Thesaurus* 418 (1980 edition). The mother's testimony was totally insufficient to establish that her son suffered "serious bodily injury by protracted impairment." See and compare *Black v. State*, 637 S.W.2d 923 (Tex.Cr.App.1982) (Held, evidence insufficient to establish serious bodily injury by protracted impairment where the victim was shot in the thigh by the defendant, which necessitated hospitalization for three days and surgery to remove the bullet and it took two or three months for the leg to heal.) Also see *Villarreal v. State*, 716 S.W.2d 651 (Tex.App.–13th 1986, No P.D.R.) (Held, evidence insufficient to sustain serious bodily injury by protracted impairment notwithstanding fact that defendant beat his victim on the face, which caused a bruise and laceration, and kicked his victim in the rib cage area of the body, which caused two of the victim's ribs to be fractured, which in turn caused the victim not to be able to raise his arms or lift anything for at least ten days.)

As to appellant's contention that the evidence is insufficient to establish beyond a reasonable doubt that the complainant in this cause suffered serious bodily injury which created a substantial risk of death, we find this Court's opinion by Judge W.C. Davis in *Williams v. State*, 696 S.W.2d 896 (Tex.Cr.App.1985), highly instructive. There, this Court, through Judge Davis, emphasized the following: "A knife wound, or a gunshot wound, although caused by a deadly weapon such as a knife or a gun, is not, per se, serious bodily injury. The shooting [or stabbing] of an individual is a serious and grave matter. Yet, it is the burden of the State to prove that such an act created a substantial risk of death, or caused death, a serious permanent disfigurement, or protracted loss or impairment of the functions of any bodily member or organ. See V.T.C.A. Penal Code, Sec. 1.07(a)(34)." (898). In other words, where the issue is whether the victim sustained bodily injury that created a substantial risk of death, in order for the prosecution to establish that the bodily injury was in fact a serious bodily injury, it is incumbent upon the prosecution not only to present evidence that the victim sustained a bodily injury, it is also incumbent upon the prosecution to establish by competent and relevant evidence beyond a reasonable doubt that the injury was life threatening; i.e., that it was so grave or serious that it must be regarded as differing in kind, and not merely in degree, from other bodily harm. Thus, in order to establish bodily injury that creates a substantial risk of death, it is incumbent upon the prosecution to present competent evidence, in addition to the fact that the victim sustained bodily injury, that a consequence of the injury is it created a substantial risk of death. In other words, the prosecution must present relevant and probative evidence from which a rational trier of fact could infer beyond a reasonable doubt that the bodily injury the victim sustained created a substantial risk of death from the injury itself, and not from some hypothetical or mere possibility that the bodily injury created a substantial risk of death.

Of course, as to what facts will be sufficient to establish that the bodily injury the victim sustained was in fact a serious bodily injury, we cannot say, because such issue must be decided on an ad hoc basis. See, however, *Black*, supra, *Villarreal*, supra, and *Williams*, supra.

In this instance, to establish "serious bodily injury" beyond a reasonable doubt, the State put on the complainant, but we

find in his testimony that he made very few references to his wounds and never testified at all to the seriousness of them. The closest he came, which would only relate to "bodily injury", see *ante*, and not "serious bodily injury", see *ante*, was when he testified that he was in pain after he discovered that he had been stabbed. In short, "The complaining witness never testified to the extent that his injuries created a substantial risk of death, or caused permanent disfigurement, or protracted loss or impairment of the functions of any bodily member or organ." *Williams*, supra, at 898.

Appellant's mother testified. However, she was never interrogated, nor did she testify, whether, in her opinion, the bodily injury to her son's back created a substantial risk of death to him.

The treating physician Lewis testified. In his testimony, both before and after he was recalled by the State to testify, he never suggested that when he treated the complainant the bodily injury the complainant had sustained created a substantial risk of death. It is true, however, that Lewis was asked by the prosecutor to speculate, through hypothetical questions, about an untreated stab wound to the complainant's back.

It is axiomatic that a hypothetical question need not be based upon all the facts of the case, and counsel may, in phrasing his hypothetical question, assume the facts in accordance with his or her theory of the case. Thus, counsel propounding the question is entitled to the witness' opinion upon any combination of the facts which were adduced that might be inferable from those facts. See Ray, 2 *Texas Practice*, § 1402 and 1403. Also see *Holloway v. State*, 613 S.W.2d 497, 502, fn. 14 (Tex.Cr.App.1981); *Barefoot v. State*, 596 S.W.2d 875, 877–888 (Tex.Cr.App.1980); *Atkinson v. State*, 511 S.W.2d 293, 295 (Tex.Cr.App.1974).

When asked hypothetically, whether the type wound he had observed on the complainant's back was more susceptible to infection than other wounds, Lewis testified that it was, because of a "blind pocket" that had resulted from the stab wound into the back of the complainant. Lewis was also asked hypothetically whether, if the wound to the complainant's back had been left untreated and became infected, this would create a substantial risk of death. Lewis responded: "If left untreated and it was infected, it [the wound] carries the possiblity of proceeding to a septicemia, which could be fatal."

We find that had the complainant's wound to his back gone untreated, these hypothetical questions and answers would have certainly been relevant and probative to the issue whether the bodily injury to the complainant's back created a substantial risk of death. However, because the complainant's wound was not untreated, but in fact was successfully treated by Lewis, the hypothetical questions and the answers that were asked and given assumed facts that did not exist in this cause.

We pause to point out that Lewis first spoke from personal knowledge about the bodily injuries that the complainant had sustained when he, Lewis, first saw him and treated him; spoke with personal knowledge as to the treatment that he administered to the wounds sustained; and concluded therefrom that the complainant's injuries were not such that they then created a substantial risk of death.

The word "substantial", which is in § 1.07 (a) (34) of the Penal Code, which defines the term "serious bodily injury", is not defined in the Penal Code. Therefore, the meaning that is ordinarily given to that word must be applied here. See Art. 3.01, C.C.P. Also see § 311.011 of the *Government Code*. The word "substantial" is usually defined to mean the following: "Of real worth and importance; of considerable value; valuable ... Belonging to substance; actually existing; real; not seeing or imaginary; not illusive; solid; true; veritable." *Black's Law Dictionary* 1280. Thus, a "substantial" risk of death is a risk that gives rise to apprehension of danger to life. Of course, by the Penal Code definition for "serious bodily injury", see *ante*, if an injury does not endanger life, it cannot be considered a serious bodily injury.

Given the fact that the Legislature placed into the Penal Code separate definitions for "bodily injury" and "serious bodily injury", it is obvious that its intent was not to make the term "bodily injury" the equivalent of the term "serious bodily injury". By what the Legislature has done, it is also obvious that it did not intend for the prosecution, in establishing its case against the accused, to be able to elevate through hypothetical questions a "bodily injury" to a "serious bodily injury". If this were true, it would be a simple matter for a prosecutor to convert, by "what if" type hypothetical questions that related to the absence of medical treatment, a "bodily injury", such as minor scratches, bruises, and abrasions, that had not been successfully treated, into a "serious bodily injury", i.e., one that is life threatening. Or, to put it another way, it would permit through hypothetical questions on assumed facts not in evidence the offense of assault to easily become the offense of aggravated assault.

We also find that it is equally obvious that our lawmakers did not intend to limit "substantial risk of death" only to those cases in which death actually results from an injury or injuries.

Professional medical attention and treatment is a fact of modern life. We may safely presume from this circumstance that the Legislature took it into account when drafting the provisions of § 22.02 (a) (1) and its predecessor statute, and meant to define the relative seriousness of bodily injuries without specific reference to whether or not such injuries receive prompt and professional medical attention. It, therefore, seems highly unlikely that the Legislature intended to make "serious bodily injury" depend upon whether the bodily injury was or was not treated. Instead, it appears likely that the Legislature intended that bodily injuries which create a "substantial risk of death" should be understood to mean only those injuries for which a substantial risk of death exists even if treated promptly according to accepted medical practice, when and to the extent that medical treatment is available at the time of the injury. We do not mean by this to say that the risk of death must be grave, or that the injury be more likely or not to produce death even if treated. Rather, if the injury presents an appreciable risk of death, whether treated or not, that risk is substantial enough for a rational trier of fact to conclude or infer that "serious bodily injury" has been sustained by the victim.

Moreover, if medical treatment is unavailable at the time and place of the injury, the risk of death must be assessed in light of these circumstances. Indeed, a temporarily debilitating injury, inflicted under conditions which foreclose the possibility of prompt medical attention, may create a life threatening situation for the injured party under a varied of possible circumstances.

We are, therefore, unwilling to hold that an accused may avoid a finding of "serious bodily injury" by postulating a different state of affairs than that in which he left his victim, any more than the State can support a finding of "serious bodily injury" by postulating a similarly nonextant scenario, such as occurred in this cause.

In judging the sufficiency of the evidence as to an element of the offense, here "serious bodily injury", the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime "beyond a reasonable doubt." *Jackson v. Virginia*, supra. This standard must be applied not only to the admitted evidence but also to a correct charge that corresponds to the allegation of the indictment. *Benson v. State*, supra. In this instance, the jury was instructed in the abstract on the definitions for "bodily injury" and "serious bodily injury", see *ante*, and was also instructed that if it found beyond a reasonable doubt that appellant caused serious bodily injury to the complainant it was to find him guilty of the offense of aggravated assault.

"The word 'rational' has no legal or technical meaning, and is defined by Webster as having reason, faculty of reasoning, endowed with reason and understanding, agreeable to reason; not absurd, prepos-

terous, extravagant, foolish, fanciful, or the likewise; judicious—as rational conduct; a rational man." *Bottom v. Bottom*, 106 S.W. 216, 217 (Ky.1907).

In this instance, the only evidence we find in the record that will support the jury's implicit finding that appellant caused the complainant serious bodily injury is that which was based solely upon the answers that Lewis gave to the prosecutor's hypothetical questions, which assumed facts not in evidence. Given the fact that the complainant was successfully treated by Lewis, who testified that the wound to the complainant's back did not create a substantial risk of death, for this Court to uphold the jury's implicit finding that serious bodily injury was established beyond a reasonable doubt would amount to a miscarriage of justice.

Given the above, we find that we are in agreement with the holding, albeit implicit, of the court of appeals, that the jury's implicit finding that the complainant sustained "serious bodily injury" was irrational, i.e., lacking in sufficient logical support in the evidence. E.g. *Schuessler v. State*, 719 S.W.2d 320, 330 (Tex.Cr.App.1986) (Opinion on State's Motion for Rehearing.)

The judgment of the court of appeals is affirmed.

ONION, P.J., and W.C. DAVIS, McCORMICK, CAMPBELL and DUNCAN, JJ., concur in the result.

CLINTON, Judge, concurring.

Bodily injury means "physical pain. illness or any impairment of physical condition." V.T.C.A. Penal Code, § 1.07(a)(7).

Serious bodily injury means bodily injury —pain, illness or impairment of physical condition of the body—"that creates a *substantial* risk of death or that causes death, serious permanent disfigurement, or *protracted* loss or impairment of *the function*

of any bodily *member or organ.*" *Id.*, 1.07(a)(34).[1]

Dissecting its definition, we find that "serious bodily injury" is bodily injury plus one or more of the following effects:

1. a substantial risk of death;
2. death;
3. serious permanent disfigurement;
4. protracted loss of the function of any bodily member;
5. protracted impairment of the function of any bodily member;
6. protracted loss of the function of any bodily organ;
7. protracted impairment of the function of any bodily organ.

Rather than examine an alleged serious bodily injury in light of those specific aspects, some cases reflect a tendency to fuse or mix one or more of them. In this cause the Austin Court of Appeals found that unlike *Brown v. State*, 605 S.W.2d 572 (Tex.Cr.App.1980), State's evidence here "requires the occurrence of at least two contingencies before substantial risk of death would exist," and concluded the evidence is insufficient to show serious bodily injury because:

> "The risk of death experienced by Blackmon was too speculative and removed from the circumstances that existed at the time the injury was inflicted to be characterized as 'substantial.' *Brown v. State*, supra. *See also Sanchez v. State*, 543 S.W.2d 132 (Tex.Cr.App.1976). Nor does the evidence reasonably support the conclusion that Blackmon suffered serious permanent disfigurement or protracted loss or impairment of bodily function."

*Moore v. State* (Tex.App.—Austin No, 3–84–336–CR, delivered October 2, 1985).[2]

The State contends the Austin Court is wrong for two reasons: it "misapplied the proper standard for review" in rejecting

---

**1.** All emphasis is mine throughout unless otherwise noted.

**2.** In *Brown v. State*, supra, the offense was aggravated rape, and victim's nose was broken and deformed on the day of that offense; there was evidence that such an injury would cause

disfigurement and dysfunction of the nose if the bone were not set. The Court found evidence sufficient to show serious permanent *disfigurement*, as well as protracted impairment of function of a bodily *organ*, the nose, before it was treated medically. *Id.*, at 574–575.

risk of death being "substantial," and it failed to consider evidence showing "a protracted loss and impairment of the function of bodily members." State's Brief, at 4. The opinion of this Court adequately answers the first contention. My purpose is to discuss applicability of the second one to the testimony set out in its brief and relied on by the State.

First the State charges that the Austin Court did not address or consider "key testimony ... that supported a finding that the victim suffered a protracted impairment of bodily function." The testimony referred to is an isolated question to and answer by Dr. Lewis and certain testimony of victim's mother.

Dr. Lewis:

Q. Did he have a degree of protracted impairment, even after the treatment you gave him?

A. I'd say yes.

Mrs. Blackmon:

Q. All right. Was [your son] bedridden for awhile at home, ma'am?

A. He were.

Q. Okay. How long was it before he started getting up around, moving around again?

A. Well, he would move every day because we had to take him backwards and forwards to the doctor every day, but as far as him going out, it was a week before he could really go out and see people.

That testimony does not prove impairment of "the function of any bodily *member* or *organ*," as required by two alternate types of serious bodily injury. *Black v. State*, 637 S.W.2d 923, at 925–926 (Tex.Cr. App.1982) (testimony gunshot wound to thigh took two to three months to heal without indicating any loss of use of limb insufficient to prove serious bodily injury). At best it shows "impairment of physical condition"—mere bodily injury—through a brief period of recuperation with visits to a doctor for checkups. That kind of "impairment" is functionally equivalent to a "six-day stay in the hospital ... for observation and to insure that he did not have any other complications," *Sanchez v. State*, 543 S.W.2d 132, at 134 (Tex.Cr.App.1976); see *Gonzalez v. State* 146 Tex.Cr.R. 108, 172 S.W.2d 97 (1943), and *Fierro v. State*, 626 S.W.2d 597, at 599 (Tex.App.—El Paso 1981) PDR refused.

The State relies on a single judge opinion from a panel of two judges in *Williams v. State*, 575 S.W.2d 30 (Tex.Cr.App.1979) (Douglas, J., with T. Davis, J., concurring in the result). The question being decided was whether a knife used to stab a robbery victim was properly found to be a deadly weapon. One wound was a gash in his left shoulder that allowed the muscle to distend such that it had to be placed back in his shoulder, and the wound closed and sutured, causing him to "lose the lifting power in his *arm* for three months." *Id.*, at 32–33. Judge Douglas found in those circumstances the injury caused "protracted impairment ... of the function of any bodily member," and thus would be classified as serious bodily injury, citing only his own *unpublished* opinion concurring in part and dissenting in part, in *Calvin v. State*, 574 S.W.2d 775 (Table) (Tex.Cr.App. No. 53,829, delivered December 13, 1978). *Id.*, at 33.

To the extent *Williams* constitutes authority for any proposition, actually it is against the State in this cause. Judge Douglas recognized that "protracted impairment" must be of "the function" of a bodily member, in that case an arm. Here the victim suffered a stab wound in his back that in no way implicated either bodily member or bodily organ.

The victim suffered only "bodily injury" in that there was physical pain at the outset followed by some "impairment of [his] physical condition" during recuperation.

With those observations, I join the opinion of the Court.