COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
KENNETH CUNNINGHAM,                            )                  No. 08-03-00363-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  243rd District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20020D04974)

MEMORANDUM OPINION

            Kenneth Cunningham appeals his conviction for aggravated assault. Appellant was found
guilty by a jury and sentenced to twenty years’ confinement and a fine of $10,000. We affirm.FACTUAL SUMMARYOn September 11, 2002, Robert Scarpa returned home after work and met Dre, a friend.


 
Dre’s cousin drove the pair over to Appellant’s apartment. Dre went inside first and Scarpa followed
fifteen minutes later. Appellant asked Scarpa whether he had called him a “bitch motherfucker.” 
Scarpa admitted that he had indeed called Appellant that name. At that point, another man in the
house hit Scarpa in the face causing him to fall down. Scarpa was then repeatedly hit although he
could not remember how many times.
            The man that hit Scarpa along with another man in the apartment held Scarpa down on the
kitchen floor. Scarpa saw Appellant lighting the stove and putting what he believed to be a
screwdriver to the burner to heat it up. Scarpa believed it was an electric stove since the burners
looked like coils and he could see the coils were red hot and glowing. Scarpa struggled to get away. 
He did not know what was going to happen but he was scared. Appellant approached him with the
red hot screwdriver and Scarpa believed Appellant intended to put his eye out. Instead, Appellant
placed the screwdriver against Scarpa’s forehead twice and burned him. He reheated it and then
burned Scarpa’s chest and the back of his neck. 
            Scarpa was picked up and walked to the door where he was told to leave and not to call the
police. He went to a nearby house and asked to use the phone to call for help. When his request was
denied, he walked the half mile home and called 911. Although there were numerous pay phones
along the way, Scarpa did not think to use a pay phone since he was not in a right frame of mind. 
He described himself as “in a fog” and “making a beeline to [his] house.”
            Officer Julia Arrieta was dispatched to Scarpa’s residence in reference to an aggravated
assault. Arrieta described Scarpa as badly beaten with burn marks on his forehead, neck, right cheek,
left arm, and chest. He had bruises and scrapes on his back, his right eye was bruised and shut, and
he was scared, shaking, and upset. Scarpa told the responding officers what had happened. Arrieta
was familiar with Appellant and asked Scarpa to tell them where Appellant lived. 
            The police proceeded to Appellant’s apartment. Patrick Jones answered the door but would
not allow the officers inside. They were kept waiting for approximately fifteen minutes. Officer
Philip Amato was dispatched to assist. Amato spoke to Jones and talked him into allowing the
officers inside. After Jones was secured, another individual was located in the kitchen. Officers also
found surveillance cameras with monitors overlooking the street and the alley. Officer Arrieta
believed that the occupants would have seen the police cars coming. Appellant was not found in the
apartment. Scarpa identified the other two men. 
            Scarpa went to the hospital where officers photographed him. He then took a taxi home
without receiving any medical care. He did not look at his injuries until he arrived home when the
adrenaline had worn off and he was beginning to feel pain from the burns. He could not see out of
one eye and he felt a stinging sensation in his neck and across his chest. He took a shower and the
coolness soothed his burns, but the stinging soon returned. The burns made it painful for Scarpa to
lie on his neck or arm. If he wore a shirt, the burns would stick and Scarpa would have to peel off
the dead skin and reapply ointment to the burns. The swelling in his eye did not subside until
November and the redness remained for some time thereafter. The burns across his chest and neck
did not heal until Christmas. Scarpa testified that people had noticed his scars which he displayed
to the jury. Photographs showing his injuries were admitted into evidence. Officer Arrieta testified
that she was shocked by Scarpa’s injuries; Officer Amato characterized the injuries as serious. 
LEGAL SUFFICIENCY
            In his sole point of error on appeal, Appellant challenges the legal sufficiency to support the
jury’s finding as to the element of “serious bodily injury.”


 He complains that the State failed to
present any lay or expert testimony as to the extent or permanence of Scarpa’s scarring, especially
since the trial was close in proximity to the assault. The State responds that there was sufficient
evidence that Scarpa had suffered serious permanent disfigurement or protracted loss or impairment
of the function of his bodily organs or members and analogized Appellant’s actions to a trail boss
using a glowing, red-hot branding iron to mark his cattle.
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). This familiar
standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts.
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact
or assign credibility to the witnesses, as it was the function of the trier of fact to do so. See Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and implicit
findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most
favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of
review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
Aggravated Assault
            There are two ways in which an aggravated assault may be committed. The first occurs when
the assailant commits assault in any manner proscribed by Texas Penal Code section 22.01 and in
so doing causes serious bodily injury to the victim. Tex.Pen.Code Ann. § 22.02(a)(1)(Vernon
Supp. 2004-05). The second occurs when the assailant commits an assault in any manner proscribed
by Texas Penal Code section 22.01, and the actor uses or exhibits a deadly weapon during the
commission of the offense. Tex.Pen.Code Ann. § 22.02(a)(2). 
            The indictment charged Appellant with intentionally, knowingly, and recklessly causing
serious bodily injury to Scarpa by burning him with a hot screwdriver and with an unknown object. 
The jury was charged that a person commits an assault if he intentionally, knowingly, or recklessly
causes bodily injury to another. Aggravated assault was defined as committing assault and causing
serious bodily injury to another. Serious bodily injury is “bodily injury that creates a substantial risk
of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of
the function of any bodily member or organ.” Bodily injury means physical pain, illness, or any
impairment of physical condition. Tex.Pen.Code Ann. § 1.07(a)(8), (46)(Vernon Supp. 2004-05).
Serious Bodily Injury
            Though often a matter of degree, there must be a meaningful distinction between “bodily
injury” and “serious bodily injury.” Hernandez v. State, 946 S.W.2d 108, 111 (Tex.App.--El Paso
1997, no pet.), citing Moore v. State, 739 S.W.2d 347, 349, 352 (Tex.Crim.App. 1987). The
determination that an injury qualifies as serious bodily injury must be made on a case-by-case basis. 
Id. There are no wounds that constitute “serious bodily injury” per se. Id.; see e.g. Moore, 739
S.W.2d at 352 (a knife wound, even though it may be caused by a deadly weapon, is not per se
serious bodily injury); Webb v. State, 801 S.W.2d 529, 533 (Tex.Crim.App. 1990)(the necessity of
surgery, alone, is insufficient to establish serious bodily injury). “Serious bodily injury” does not
depend upon whether the victim received medical treatment. Moore, 739 S.W.2d at 354. A person
who receives injuries is qualified to express an opinion as to the severity of those injuries. Coshatt
v. State, 744 S.W.2d 633, 636 (Tex.App.--Dallas 1987, pet. ref’d), citing Hart v. State, 581 S.W.2d
675, 677 (Tex.Crim.App. 1979).
Serious Permanent Disfigurement
            An injury which leaves a scar is insufficient to establish serious permanent disfigurement. 
Hernandez, 946 S.W.2d at 113; see McCoy v. State, 932 S.W.2d 720, 724 (Tex.App.--Fort Worth
1996, pet. ref’d)(slight scar on the lip, though permanent, was not sufficient to show serious
permanent disfigurement). Instead, there must be evidence of some significant cosmetic deformity.
Id.; see Brown v. State, 605 S.W.2d 572, 575 (Tex.Crim.App. 1980)(testimony that broken nose
would cause disfigurement and dysfunction if untreated sufficient to establish serious bodily injury);
Moore, 802 S.W.2d at 369 (sufficient evidence of serious bodily injury where victim’s cheek bone
was fractured in three places; surgery necessary to prevent significant cosmetic deformity); Pitts v.
State, 742 S.W.2d 420, 421-22 (Tex.App.--Dallas 1987, no pet.)(evidence of significant
disfigurement where victim suffered five fractures in the facial area necessitating several surgeries
to repair the damage). The relevant issue in determining the degree of disfigurement is the damage
caused by the wound when inflicted, not disfigurement as exacerbated or ameliorated by medical
treatment. Id., citing Brown, 605 S.W.2d at 575; Moore, 802 S.W.2d at 370; Goodman v. State, 710
S.W.2d 169, 170 (Tex.App.--Houston [14th Dist.] 1986, no pet.).  
Protracted Loss or Impairment of Any Body Organ or Member
            Protracted impairment means that some function of either an organ or body member is
impaired. Hernandez, 946 S.W.2d at 113. The Penal Code does not define the phrase “bodily
member or organ.” The Dallas Court of Appeals has held that the back is a separate definable part
of the body sufficient to bring it within the statutory term. Colshatt v. State, 744 S.W.2d 633, 635
(Tex.App.--Dallas 1987, pet. ref’d). The Amarillo Court has determined that teeth fall within the
definition. Lenzy v. State, 689 S.W.2d 305, 310 (Tex.App.--Amarillo 1985, no pet.). Absent a
statutory definition, a term must be “taken and understood in its usual acceptation in common
language”. Thus, a bodily member may be construed as “[a] part or organ of the body; especially
a limb or other separate part.” Id. at 310.
Application
            We have reviewed the color photographs showing Scarpa’s injuries at the time of the assault:
(1) a burn over ten inches in length spanning across his collarbone across his chest to the opposite
arm pit one inch in width in spots; (2) a burn on the back of his neck spanning at least three inches
long and approximately three-fourths of an inch wide in places; (3) a burn on his left arm spanning
three inches long and three-fourths of an inch wide in places; (4) a burn in the middle of his forehead
spanning two inches long and half an inch in width; (5) a burn on the right side of his forehead
spanning two and a half inches long and a fourth inch wide; (6) bruising to the right side of his face
from his ear down his cheek bone approximately three inches long and up from his temple down to
the cheek bone approximately two and a half inches wide; (7) bruising on his back left shoulder four
inches long and two inches wide; (8) bruise on his lower back over two inches long and
approximately one and a half inches wide; (9) bruising on the back of his right shoulder four inches
long and two inches in width in places; and (10) bruising on the back of his upper right shoulder two
inches long and one inch in width. The jury examined these photographs and observed the resulting
scars ten months after the injury. Scarpa testified that the burns across his chest and neck did not
heal until around Christmas and that people had noticed his scars. Both Scarpa and Officer Arrieta
testified they were shocked by the injuries. Officer Amato testified that he had not seen injuries
worse than Scarpa’s.
            The jury can apply common sense, knowledge, and experience gained in the ordinary affairs
of life in drawing reasonable inferences from the evidence. No medical testimony was needed for
the jury to recognize the serious disfigurement resulting from the burns, especially from the scars
on Scarpa’s face. The jury could have rationally determined that Scarpa suffered serious permanent
disfigurement simply by viewing the color photographs of his injuries at the time of the assault, the
resulting scars on his face, neck, arm, and chest, and the characterization of the injuries by Scarpa
and Officers Arrieta and Amato. Accordingly, we overrule the sole point and affirm the judgment
of the trial court.


December 16, 2004                                                     
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)