NUMBER 13-05-00333-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GARY TREYBIG, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Chief Justice Valdez



 

 A jury convicted Gary Treybig, appellant, of murder in the first degree and
sentenced him to twenty years in prison. Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon
2003). The trial court entered a judgment of conviction and sentence according to the
jury's verdict. By three issues, Treybig contends that the evidence is legally and factually
insufficient to support his conviction, and that the trial court erred in limiting his cross-examination of a prosecution witness. We affirm.

I. BACKGROUND

 On the morning of October 21, 2004, a tourist found the body of Frank Fore floating
near a seawall in Corpus Christi, Texas. Blood and vomit were found at the base of the
seawall. Police detectives Kelly Isaacs and Curtis Abbott utilized autopsy results and
witness statements in their investigation into Fore's death. 

 Detective Isaacs testified that shortly after Fore's body was found, she was
contacted by an individual, believed to be a transient person, claiming that Fore's death
was a homicide, that someone called "Chris" knew what happened, and that "Jesus" and
"Ozzy" were involved. (1) Later that day Detective Isaacs received a phone call from the
same individual stating that the men involved were near the seawall. She drove to the
seawall and made contact with the transient-informant and three other individuals: Keith
Still, Chris Garcia, and Treybig. She explained that she was investigating Fore's death and
asked the individuals to contact her if they had any information. Before leaving, Garcia told
Detective Isaacs that he would call her.

 On October 24, 2004, Treybig met Detective Isaacs at the police station. Treybig
gave a written statement acknowledging having met Fore, drinking with him, and leaving
him asleep at the seawall the night before his death. Fore's truck was discovered,
abandoned, in the parking lot of a grocery store the day Treybig contacted the police. 
Detective Abbott interviewed Garcia. According to Detective Abbott's testimony, Garcia
implicated Treybig and other individuals in Fore's murder. Treybig was subsequently
arrested. 

 In February 2005, Detective Abbott was contacted by Nueces County Jail personnel
about an inmate who might have useful information. Charles Nash, the inmate, told
Detective Abbott that he had spoken to Treybig while the two were in jail. Nash knew
significant details about the alleged offense, including the location, vomit on the step of the
seawall, and where Fore's truck had been abandoned. Detective Abbott testified that he
took Nash's statements seriously because he would not have known where Fore's truck
was recovered unless someone told him. Treybig was indicted and tried for Fore's murder.

 At trial, the State presented forensic evidence in the form of autopsy and toxicology
reports and the testimony of Ray Fernandez, M.D. During the autopsy, Dr. Fernandez
noticed abrasions on Fore's forehead and face. Watery fluid was discovered in Fore's
chest cavity, which is consistent with drowning. A toxicology report revealed that Fore had
Valium in his system and a blood alcohol level of 0.272. Dr. Fernandez testified that the
cause of death was a combination of drowning, blunt facial trauma, and acute alcohol
intoxication. He classified the death as a homicide and testified that Fore drowned after
an assault.

 The State called Charles Nash to testify about statements Treybig made while the
two were incarcerated at the Nueces County Jail. Nash testified that Treybig told him what
happened the day of the incident: At some point before Fore's death, Treybig befriended
Fore. Fore and Treybig ate together at a local Loaves and Fishes, bought alcohol, and
made their way to the seawall the evening before Fore died. The two were accompanied
by someone called "Ozzy." Treybig and Ozzy were using Fore to buy "beer and [stuff] [sic]"
and wanted to rob Fore of his truck so they could sell it for drugs. Fore started vomiting
when the group arrived at the seawall. Treybig then hit Fore's head once or twice, Fore
fell down, and Treybig pushed Fore off the seawall into the water. Treybig and Ozzy left
in Fore's truck, intent on selling the truck's parts for drugs.

 The State also called Cristobal Garcia. Garcia claims to have witnessed Fore's
murder. Garcia was sitting by the seawall the morning of the incident when he heard drunk
people arguing. The argument was between Larson, Treybig, and Fore, but three other
individuals were also present. From what Garcia understood, Fore donated tools to sell
for drugs, and the three individuals in charge of the trade had returned with less than what
was anticipated. Fore became ill, climbed down to the last step of the seawall, bent over,
and began vomiting. Ozzy then hit Fore in the head. Treybig also hit Fore in the head. 

 Garcia described the hit as real hard and the kind of smack that would crack one's
skull. Fore fell, hit his head on the concrete, and started going into convulsions. One of
the other individuals kicked Fore in the stomach while he was down, and Fore fell in the
water. The group told Garcia that they were going to sell Fore's truck and then left. Garcia
jumped in the water to save Fore, and Fore told him, "help me." Garcia, however, could
not get Fore out of the water. Garcia went up the seawall to a restroom and was going to
get help, but police arrived soon thereafter. 

 The jury was charged with the law of intentional murder, conspiracy to commit
murder, manslaughter, and the law of parties. It convicted Treybig of murder and assessed
punishment at twenty years in prison. This appeal ensued.

II. DISCUSSION

 In his first and second issues, Treybig challenges the legal and factual sufficiency 

of the evidence. 

A. Issues 1 & 2: Challenges to the Legal and Factual Sufficiency of the Evidence

 We review the legal sufficiency of the evidence by viewing the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556, 562 (Tex. Crim.
App. 2000). Although our analysis considers all the evidence presented at trial, we may
not re-weigh the evidence and substitute our judgment for that of the fact finder. King, 29
S.W.3d at 562.

 We review the factual sufficiency of the evidence by answering only one question:
"Considering all of the evidence in a neutral light, was the fact finder rationally justified in
finding guilt beyond a reasonable doubt?" Watson v. State, 204 S.W.3d 404, 415 (Tex.
Crim. App. 2006). We set aside the verdict only if the evidence is so weak that it is clearly
wrong and manifestly unjust or the contrary evidence is so strong that the "beyond a
reasonable doubt" standard of proof could not have been met. Garza v. State, 213 S.W.3d
338, 344 (Tex. Crim. App. 2007) (citing Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997)). In turn, a verdict is clearly wrong and unjust if the jury's finding is "manifestly
unjust," "shocks the conscience," or "clearly demonstrates bias." Id. (citing Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)).

Applicable Law

 In order to prove that Treybig was guilty of murder, the State was obligated to prove,
beyond a reasonable doubt, that he intended to cause serious bodily injury and committed
an act clearly dangerous to human life that caused Fore's death. Tex. Pen. Code Ann. §
19.02(b)(2). "Serious bodily injury" means bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss or
impairment of the function of any bodily member or organ. Tex. Pen. Code Ann. §
1.07(a)(46) (Vernon Supp. 2006).

1. Analysis of Treybig's Legal Sufficiency Challenge

 By his first issue, Treybig specifically challenges the legal sufficiency of the evidence
supporting the "serious bodily injury" element of murder. He argues that the there is no
evidence showing that he did anything to cause serious bodily injury. Treybig points to the
fact that Garcia was in the water with Fore before he drowned and that Fore told him, "help
me." Fore, therefore, could not have been seriously injured by Treybig's blows to his head. 
The State responds by arguing that Treybig's blows to Fore's head constitute a serious
bodily injury because Fore fell to the concrete, started convulsing, and immediately fell into
the water.

 Regarding the Legislature's definition of serious bodily injury, the court of criminal
appeals has noted that:

[I]f the injury presents an appreciable risk of death, whether treated or not,
that risk is substantial enough for a rational trier of fact to conclude or infer
that "serious bodily injury" has been sustained by the victim. Moreover, if
medical treatment is unavailable at the time and place of the injury, the risk
of death must be assessed in light of these circumstances. Indeed, a
temporarily debilitating injury, inflicted under conditions which foreclose the
possibility of prompt medical attention, may create a life threatening situation
for the injured party under a [variety] of possible circumstances.


Moore v. State, 739 S.W.2d 347, 353 (Tex.Crim.App. 1987).

 In the instant case, Garcia testified that Ozzy and Treybig both hit Fore in the head. 
Treybig's blow to Fore's head was hard, the kind that could crack one's skull. Fore fell, hit
his head on the concrete step of the seawall, and started convulsing after being hit by
Treybig. Fore then fell into the water. Nash testified that Treybig told him he had hit Fore
and pushed him into the water. Nash also testified that Treybig wanted to rob Fore of his
truck. Detective Abbott testified that Nash knew where Fore's truck had been left and that
only those involved with the alleged offense could know that fact. 

 After viewing the evidence in the light most favorable to the verdict, we conclude that
there is enough evidence for any rational trier of fact to have found that Treybig intended
to cause serious bodily injury. Treybig's first issue, which challenges the legal sufficiency
of the evidence, is overruled.

2. Analysis of Treybig's Factual Sufficiency Challenge

 Treybig's factual sufficiency challenge centers around the veracity of Nash and
Garcia's testimony. He contends that Garcia's testimony should be discounted because
Garcia did not correctly recall the date or the detective that he spoke to during the course
of the investigation. Treybig similarly contends that Nash is a discredited witness because
his motivation to testify was to make a deal with prosecutors for his legal troubles. Treybig
claims that Nash knew sensitive information about the circumstances surrounding Fore's
truck because he looked at a discovery packet provided to Treybig by Treybig's counsel. 
Treybig points us to the testimony of Forest Peirce who testified that he saw Treybig give
Nash his discovery packet and that Nash examined the packet.

 The most important evidence that Treybig claims undermines his conviction is that
the testimony of Garcia and Nash is untrustworthy. See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003) (holding that an appellate opinion addressing factual sufficiency
must include a discussion of the most important evidence that appellant claims undermines
the jury's verdict). The fact finder, however, is the judge of the weight and credibility of a
witness's testimony. Wesbrook, 29 S.W.3d at 111-12. The fact finder may choose to
believe all, some, or none of a witness's testimony. Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986). 

 In the instant case, the jury may have chosen to believe Garcia and Nash's
testimony despite Treybig's contention that they are untrustworthy characters. Garcia's
testimony corroborates Nash's testimony. Moreover, both Garcia and Nash testified that
Fore was hit in the head and vomited. Dr. Fernandez testified that Fore sustained
abrasions on his head and vomit was found at the scene. 

 We conclude that the evidence is not so weak that the verdict is clearly wrong and
manifestly unjust and that the contrary evidence is so not strong that the "beyond a
reasonable doubt" standard of proof has not been met. Treybig's second issue, which
challenges the factual sufficiency of his conviction, is overruled.

B. Issue 3: Limitation of Treybig's Cross-Examination of Garcia

 In his third issue, Treybig contends that the trial court abused its discretion in limiting
the cross-examination of Gracia. Treybig wanted to cross-examine Garcia about his
strange behavior during the investigation of Fore's death. 

 In a hearing, outside the presence of the jury, Treybig sought to elicit testimony from
Garcia concerning three incidents of public masturbation. The clerk's record contains a
police report detailing socially bizarre behavior. It states that Garcia began masturbating
in front of a female police officer while speaking to her about Fore's death. Garcia was
booked on public lewdness charges, but jailers sent him to the hospital because his eye
was closed shut from an assault. Upon arriving at the hospital, security personnel advised
the detention officers that Garcia had sought medical treatment at the hospital for his eye
the prior day but was asked to leave because he was masturbating in front of medical
personnel. On November 5, 2004, Garcia was arrested again for masturbating in a Burger
King parking lot. 

 The State's objection to Treybig's questioning of Garcia's bizarre behavior was
sustained by the trial court. The jury was presented, however, with evidence that Garcia
was schizophrenic, bipolar, and was prone to mood swings. The jury heard from Garcia
that he would see ghosts, hear voices, and took medication for his mental health problems. 
Garcia further testified that he had been convicted on four counts of indecent exposure and
was serving, at the time of trial, a six month jail sentence for those counts.

1. Standard of Review

 When reviewing a trial court's ruling on the admission of evidence, an appellate
court applies an abuse of discretion standard of review. Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its
decision lies outside the zone of reasonable disagreement. Green v. State, 934 S.W.2d
92, 101-102 (Tex. Crim. App. 1996).

2. Applicable Law

 In the instant case, Treybig was allowed to question Garcia about the extent of his
mental illness and its effect on his ability to perceive reality. See generally, Virts v. State,
739 S.W.2d 25, 30 (Tex. Crim. App. 1987) ("Cross-examination of a testifying State's
witness to show that the witness has suffered a recent mental illness or disturbance is
proper, provided that such mental illness or disturbance is such that it might tend to reflect
upon the witness's credibility."). Treybig's complaint on appeal is that he was not allowed
to question Garcia about what could be categorized as the physical symptoms of Garcia's
mental illness. 

 The trial court was guided by our rules of evidence, which provide that:

Specific instances of the conduct of a witness, for the purpose of attacking
or supporting the witness' credibility, other than conviction of crime as
provided in Rule 609, may not be inquired into on cross-examination of the
witness nor proved by extrinsic evidence.


Tex. R. Evid. 608(b). At trial, Treybig attempted to use Garcia's bizarre behavior to further
discredit him. This evidence was already before the jury in the form of Garcia's testimony
that he was serving a six-month jail sentence for four counts of indecent exposure. The
trial court did not abuse its discretion in excluding the explicit testimony Treybig sought. 
Treybig's third issue is overruled. 

III. CONCLUSION

 The judgment of the trial court is AFFIRMED. Tex. R. App. P. 43.2(a).


 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed 

this the 29th day of August, 2007.
1. The record contains testimony noting that Treybig went by Jesus.