# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00275-CR

**Amanda Marie Bittner, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2008-417, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court entered a judgment stating that Amanda Marie Bittner was guilty on five counts of injury to a child and that she used a deadly weapon in committing the offenses. *See* Tex. Penal Code Ann. § 22.04 (West Supp. 2009). Punishment was assessed at 65 years in prison for each count. On appeal, Bittner contends that the evidence was legally and factually insufficient to prove that her child's various bone fractures and brain bleeding constituted serious bodily injury. Bittner also contends and the State concedes that the court erred by entering separate judgments of conviction on counts three and four because—based on the verdict form—the jury returned a single verdict on the two counts. We reform the judgment to consolidate the convictions and punishment on counts three and four into a single conviction and punishment. As modified, the judgment is affirmed.

Bittner gave birth to her child on December 21, 2006. The jury found that Bittner intentionally or knowingly caused serious bodily injury to the child in the following ways during the first six weeks of the child's life: (1) caused rib fractures on or about January 17, 2007, by squeezing the child with her hands or arms, (2) caused a skull fracture on or about January 28, 2007, by causing the child's head to strike a wall, door jamb, or an unknown object, (3) caused a skull fracture or bleeding in the brain on or about January 31, 2007, by causing the child's head to strike a wall, a door jamb, or an unknown object, and (4) caused a tibia fracture on or about January 31, 2007, by twisting and pulling the child's leg with her hands.

On appeal, Bittner challenges the sufficiency of the evidence to support the necessary findings that these injuries met the definition of serious bodily injury. The court defined bodily injury consistent with the statute as "physical pain, illness, or any impairment of physical condition." *See id.* § 1.07(a)(8) (West Supp. 2009). The trial court defined serious bodily injury as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

In reviewing the legal sufficiency of the evidence, we review all of the evidence presented in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The question is whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton*, 235 S.W.3d at 778. The jury is to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences in a manner that supports the verdict. *Clayton*, 235 S.W.3d at 778. We must defer to the jury's resolution of conflicting evidence in favor of the prosecution and

analyze whether necessary inferences are reasonable based on the evidence when viewed in the light most favorable to the verdict. *Id.*

In reviewing the factual sufficiency of the evidence, we consider all the evidence in a neutral light, while giving due deference to the jury's factual determinations. *See Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Evidence is factually insufficient when it is so weak that the verdict is clearly wrong and manifestly unjust, or when the verdict is against the great weight and preponderance of the evidence. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Vasquez*, 67 S.W.3d at 236. We must avoid substituting our judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

Dr. Christopher Filletti is a pediatrician who first examined the child on January 31, 2007, in his office. Reviewing medical records, he testified that the child's examinations on December 26, 2006, and January 17, 2007, revealed no injuries, nothing unusual, and normal, healthy condition and development. He testified that Bittner complained on January 31, 2007, that the child was irritable and not eating much, and that her eyes were tracking to the left. He found that the child's temperature was nearly two degrees below normal. He was not told of, did not examine for, and did not find the fractures and bruising found by doctors examining the child at hospitals later that day. Although he saw her chest and abdomen during the examination, he did not notice any bruising. The weather was cold, and the child was wearing a hat that he did not remove. Based on

3

the child's hypothermia and unusual eye movement, Dr. Filletti suspected that the child had some sort of infection—possibly meningitis—and sent her to the emergency room.

Dr. Paul Richter examined the child in a New Braunfels hospital emergency room on January 31, 2007. He testified that the child was listless and had a very weak cry. She had a huge, obvious bruise on the back of her head and had bruises on her chest wall that the doctor testified had to be due to trauma. Her eyes were offset, not really focusing, and gave her a glazed-over appearance. A CAT scan of the child's head revealed a skull fracture on the right side, coupled with notable swelling of the skin and bruising in the child's brain. There was also a large bruise on the outside of the left side of the child's skull. X-ray images of the remainder of the child's body revealed three or four "old" rib fractures on her right side. Dr. Richter testified that these injuries required a great deal of force to inflict and constituted serious bodily injury. He opined that these injuries put her life at risk and impaired the function of her bodily members and organs. He acknowledged that the rib fractures were healing and did not cause permanent serious disfigurement, but could not say whether there was protracted loss or impairment of function. He sent the child by helicopter to a San Antonio children's hospital.

Dr. James Anderst examined the child in the San Antonio hospital. He confirmed the areas of injury described by Dr. Richter, but testified that the child had two skull fractures and counted six posterior rib fractures that were more than a week but less than four weeks old. He testified that the rib fractures must have been caused by being violently hit or squeezed. He testified that the skull fracture coupled with the bleeding on the brain and the hematoma over it caused a serious risk of death. He said that the skull fractures impaired the ability of the skull to protect the

4

brain, and skull fractures take "quite a while" to heal. The severity of the injury was underscored by the seizures the child suffered. Dr. Anderst testified the rib fractures impaired the ribs' function of supporting chest structures, assisting breathing, and protecting from injury. He testified that the impairment would last for weeks during the healing process. Similarly, he testified that the tibia fracture would impair its function during the healing process. He discussed the disruption of the blood supply to the bone and the growth process of the bone, as well as the development of muscles attached to the bone. He testified that all of these injuries met the definition of serious bodily injury. He acknowledged that the rib and tibia fractures did not pose a serious risk of death, but testified that the injuries caused a protracted loss or impairment of their function and, in the case of the ribs, organs contained inside the rib cage.

Bittner does not point to any evidence disputing the existence of these injuries, but argues that the doctors provided essentially hypothetical testimony regarding what such injuries could cause rather than specific testimony about impairments or risks that actually resulted from these injuries. She argues that their testimony did not show that the injuries caused impairments that were protracted, which means "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987).

Dr. Anderst testified to the importance of ribs in breathing and protecting internal organs. The child's ten ribs were broken in as many as six places. The doctors estimated that the child's ribs had been broken for between one and four weeks of her six weeks of life. Dr. Richter testified that the child had a very weak cry, though there is no testimony whether this was due to

5

the broken ribs, the brain injury, or some other cause. The ribs were healing, but not healed. The only evidence is that ribs take several weeks to heal. We conclude that the evidence was legally and factually sufficient to support the jury's finding that the rib fractures constituted serious bodily injury.

The skull fractures were similarly defined as impairing the skull's function of protecting the brain that would last during the several weeks of healing. The more recent fracture was coupled with a surface bruise and internal bleeding of the brain. The child had seizures. Dr. Anderst testified that the bleeding in the brain created a serious risk of death. We conclude that the evidence was legally and factually sufficient to support the jury's finding that one of the skull fractures and either the other skull fracture or the bleeding in the brain (or both) constituted serious bodily injury.

Dr. Anderst testified that the tibia fracture impaired not only the bone's function, but its growth and the development of muscles attached to it. As the child was less than six weeks old when the fracture was inflicted, the fracture did not prevent the child from walking or crawling. We conclude that the testimony that the basic functions of bone and muscle growth would be impaired for several weeks during the first months of the child's life provide legally and factually sufficient evidence to support the jury's finding that the tibia fracture constituted serious bodily injury.

The State concedes that the trial court erred by entering separate judgments of guilt and punishments on two counts that were combined into one jury question for guilt/innocence and punishment. The relevant charges are Count III, which alleged a skull fracture occurring on or about January 31, 2009, and Count IV, which alleged an injury causing bleeding in the brain occurring the

6

same day.  We reform the judgment to conform with the jury's verdict as follows:  (1) the judgment pertaining to Count III is reformed to pertain to Counts III/IV on the line stating "Offense for which Defendant Convicted;" and (2) the judgment pertaining to Count IV is vacated.  The result is that Bittner is convicted of injury to a child on Count I, Count II, Count III/IV, and Count V.  As ordered in the original judgments, punishment is assessed at 65 years in prison for each of the convictions under Count I, Count II, Count III/IV, and Count V.  As ordered in the original judgment, these terms are to be served concurrently with each other.

As reformed, the judgment is affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Modified and, as Modified, Affirmed

Filed:   June 25, 2010

Do Not Publish