Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00290-CR

Nicanor **HERNANDEZ** III a/k/a "Little Nick,"
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Menard County, Texas
Trial Court No. 2009-02165
The Honorable M. Rex Emerson, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: January 12, 2011

AFFIRMED

A jury convicted appellant Nicanor Hernandez III a/k/a "Little Nick" of aggravated assault and sentenced him to five years in the Texas Department of Criminal Justice–Institutional Division. On appeal, Hernandez contends the evidence is insufficient to prove the victim, Jimmy Light, suffered serious bodily injury, or that Hernandez intended to cause Light serious bodily injury. We affirm the trial court's judgment.

**BACKGROUND**

Hernandez went to visit his cousin at an apartment in Menard, Texas. As Hernandez was knocking on the door of his cousin's apartment, Light, who lived next door and believed drugs were being sold from the apartment, confronted Hernandez. Light asked Hernandez if he was selling drugs. According to Light, Hernandez "postured up," and said it was none of Light's "f'ing business." Light then threatened to call Crime Stoppers, though he testified he did not intend to call and was simply being "a smart aleck" in response to Hernandez's posturing. At this, Hernandez "doubled up his fist and bowed out his chest and went to kind of hopping around and got an attitude." Light stated he found this comical and "was kind of laughing," which further infuriated Hernandez. Hernandez began to approach him, but Light held up his hand to keep distance between them. The men pushed each other, and Hernandez stated he was going to call his father. Though Light denied striking Hernandez, Hernandez testified Light hit him in the throat.

After Hernandez stated he was going to call his father, Hernandez left the apartment complex with his aunt, who had driven him. Light stated he was certain Hernandez's father, who is known as "Big Nick," would come over to the apartment complex and everything would be worked out. Light testified that although he was not close to Big Nick, they went to school together and knew each other.

Approximately forty-five minutes after Hernandez left, he returned to the apartment complex with Big Nick. As Light described it, Hernandez and his father attempted a stealthy approach, but once they realized they had been spotted by Light, Big Nick came forward and he and Light began to talk. While Light and Big Nick were, in Light's words, resolving the problem, he heard Hernandez say "son of a bitch," and the next thing Light knew he was "ten

feet farther down the sidewalk" than he had been when he was talking to Big Nick. Light saw "a flash of light." Light's girlfriend, who was on the porch of their apartment, testified Hernandez punched Light in the face. When Light looked up, he saw Hernandez's feet, which were seven or eight feet away. According to Light, Big Nick was next to him, preventing him from getting up. Light's girlfriend confirmed that Big Nick was holding Light down. While Light was being held down, he saw another flash of light. Light's girlfriend testified Hernandez kicked Light in the face while Light was still down. He was ultimately able to get to his feet, but according to Light's girlfriend, Hernandez hit Light again. Light then saw Hernandez "dancing around telling [him] to, come on, you know, Mother." Hernandez was cursing at him and threatening him with a rake. Light said he was defenseless at this point and trying to get back to his apartment. Ultimately, Light's girlfriend came out of the apartment, stood between Light and the Hernandezes and helped Light inside.

Light provided extensive testimony about his injuries and the continuing effects. His girlfriend provided similar testimony. The State introduced Light's medical records, which detailed his injuries.

After considering the evidence and arguments of counsel, the jury found Hernandez guilty. Hernandez perfected this appeal.

## ANALYSIS

As noted above, Hernandez brings a single issue in which he challenges the sufficiency of the evidence. He specifically contends the evidence is insufficient to establish Light suffered serious bodily injury, or that he intended to cause Light serious bodily injury. As to the first contention, Hernandez argues the evidence is insufficient to show the injuries he inflicted caused Light "serious permanent disfigurement or protracted loss or impairment of the function of any

bodily member or organ."[1]   With regard to evidence of intent, Hernandez contends the jury should not have been permitted to infer that he intended to cause Light serious bodily injury simply because he struck Light in the face with his fist and then kicked him in the face.

### *Standard of Review*

Hernandez contends the evidence is legally and factually insufficient to establish the intent and serious bodily injury elements of aggravated assault.  However, there is now but one standard of review for sufficiency complaints in criminal cases.  *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010); *Rosales v. State*, No. 04-09-00498-CR, 2010 WL 4336171, at *2 (Tex. App.—San Antonio Nov. 3, 2010, pet. filed).   In *Brooks*, the court of criminal appeals adopted the *Jackson v. Virginia* legal sufficiency standard as the standard of review applicable in all sufficiency challenges.  *Brooks*, 323 S.W.3d at 895; *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Accordingly, we will review "all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt."  *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing *Jackson*, 443 U.S. at 318-19; *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991)).  We will also defer to the jury's credibility and weight determinations, and after giving such deference, "will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."  *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

---

[1] The State may also prove serious bodily injury by proving the defendant's actions created a substantial risk of death or caused death.  *See* TEX. PENAL CODE ANN. § 1.07(a)(46)(West Supp. 2010).  However, in this case it is clear the State sought to prove the existence of serious bodily injury by proving not that Hernandez's actions created a substantial risk of death to Light, but that Hernandez's actions caused Light serious permanent disfigurement or protracted loss or impairment of bodily organs.

*Application*

*Serious Bodily Injury*

A person commits the offense of aggravated assault if the person "intentionally, knowingly, or recklessly" "causes serious bodily injury to another." TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (West Pamph. 2010). "Serious bodily injury" includes bodily injury that causes "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2010). In deciding whether a victim suffered "protracted loss or impairment of any bodily member or organ," the court of criminal appeals has held there must be evidence that the loss or impairment was "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987).

To prove Hernandez caused Light serious bodily injury, the State presented testimony from Light, Light's girlfriend, and introduced Light's medical records. Light testified that after his encounter with Hernandez, he was bleeding profusely. He stated the assault caused him more pain than when he had been hit in the mouth with a sledge hammer while he was working on a drilling rig. The sledge hammer incident resulted in Light having to wear dentures. After giving police a statement, Light sought medical care at a local clinic, but was sent to Shannon Medical Center in San Angelo. Light was given a CAT scan and pain medication and ultimately released.

Light then described his injuries and the continuing effects. He first stated that months after the assault, he can still feel a facial bone protruding toward his left eyeball, and that when he shifts his eyes to the left, his "eyesight screws up and [he] see[s] double-vision." Light said

his left eye does not work correctly and he has double vision in that eye. This defect prevents him from operating a crane, which is the type of work he prefers.

Light testified that when he looks in the mirror, his face looks different than it did before he was punched and kicked. He also testified that he has breathing problems every day and night. He stated his nose becomes congested and he is unable to breathe through it, which never happened to him before. Light said his breathing problems started immediately after he was injured by Hernandez. Light specifically testified that even seven months after the attack he is impaired because of Hernandez's actions. In addition to his breathing problems, Light stated that he is unable to sleep through the night because he wakes up three to five times and has to sit up for ten to twenty minutes and use nasal spray to get any relief. He also uses nasal spray throughout the day in order to breathe.

Light also testified that he has numbness in his face, and "regularly" has headaches, which he did not have before the assault. He specifically stated the headaches have been "persistent" since the attack, and that the pain from the headaches is an impairment he suffers from every day. He has trouble eating because his dentures no longer fit correctly, and it is difficult to chew because of the pain. Light said he was able to eat fine before, but since the attack that has changed.

Light's girlfriend also testified about Light's injuries. After the attack, she said Light's face was so swollen he was unrecognizable. Light was unable to even wear his dentures for two or three days, and his eye was swollen shut. The girlfriend confirmed that before the assault, Light was able to eat normally, even with his dentures. However, after the attack and even now, he cannot because his teeth do not "match up" and are not straight. The girlfriend also provided testimony confirming Light's continuing breathing problems, which did not exist before the

attack. She testified that Light's face looks different than it did before the assault. She said that now when you look at him "straight on . . . his left eye is sunk in. His like, eye socket is sunk in. If you look at him straight on, you can see that it's visibly different. It's not the same. It was not like that before." The girlfriend testified she has personally observed the changes in Light, including his persistent breathing problems, constant eyesight difficulties, and unrelenting headaches.

The State also introduced Light's medical records from Shannon Medical Center, which showed the injuries suffered by Light in the assault by Hernandez. According to the records, Light suffered "numerous facial bone fractures with associated soft tissue swelling." More specifically, Light was observed to have the following fractures: (1) "a fracture involving the left zygoma frontal suture"; (2) "displaced fractures . . . involving the floor of the left orbit . . a fracture involving the inferomedial wall of the left orbit"; (3) "a fracture of the left lateral nasal bone with associate fracture of the nasal septum"; (4) "fractures . . . involving the anterior, medial, and lateral walls of the left maxillary sinus and right maxillary sinus"; and (5) "fractures of the mid body of the left zygoma." These fractures obviously account for Light's breathing and vision problems as all of the fractures were in the nasal and optic regions.

We hold the testimony provided by Light and his girlfriend, along with Light's medical records, was sufficient to establish Light suffered, at a minimum, "protracted loss or impairment of the function of any bodily member or organ." *See* TEX. PENAL CODE ANN. § 1.07(a)(46). The evidence showed lingering, ongoing impairment of Light's nasal passages as demonstrated by his inability to breathe properly. There was also evidence of continuing, ongoing trouble with his eyesight, establishing impairment of the function of his eye or eyes. And finally, there was evidence of Light's continuous struggle to eat, an impairment to his mouth. The testimony

showed the impairments described by Light and his girlfriend were "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *See Moore*, 739 S.W.2d 347 at 352.

Hernandez points to two cases in support of his claim that the evidence was insufficient to establish protracted loss or impairment. We have reviewed those cases, and find them distinguishable. In *Webb v. State*, the court of criminal appeals held the evidence insufficient to prove serious bodily injury when the victim merely testified that he required surgery to repair a broken jaw bone after the defendant hit the victim with a rock. 801 S.W.2d 529, 530-32 (Tex. Crim. App. 1990) (per curiam). The court reasoned the evidence was insufficient because there was nothing to establish the victim's injury, without surgery, would have caused permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. *Id*. at 532. Nor was the victim's temporary loss of memory for a short time after the attack evidence of protracted loss or impairment of the function of a bodily member or organ. *Id*. at 533.

We agree the evidence in *Webb* was insufficient. However, unlike *Webb*, the State in this case, through the testimony of Light and his girlfriend, presented evidence of protracted loss and impairment of Light's nose, eyes, and mouth.

In *Villarreal v. State*, the court held there was insufficient evidence of serious bodily injury because the evidence showed only that the victim's injuries, two fractured ribs and a split lip, prevented him from raising his arms for ten days, and he suffered pain for two weeks. 716 S.W.2d 651, 651-52 (Tex. App.—Corpus Christi 1986, no pet.). Here, there was testimony that Light has suffered breathing, vision, and eating problems for approximately seven months, and that these impairments persist. This is far beyond the two weeks found insufficient in *Villarreal*.

Accordingly, we hold the evidence is sufficient to establish Light suffered serious bodily injury. We overrule this portion of Hernandez's sufficiency complaint.

*Intent*

Hernandez contends the State did not produce sufficient evidence to establish he "had the specific intent to cause the results that were inflicted." Hernandez argues that simply proving Hernandez hit and kicked Light in the face is insufficient, and that the jury could not infer intent to cause serious bodily injury simply from those actions.

As previously noted, a person commits an aggravated assault if he intentionally, knowingly, or recklessly commits an assault that causes serious bodily injury." TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1). In this case, the jury was charged in accordance with the Penal Code with regard to the applicable mental states. Thus, as to Hernandez's mental culpability, the State could prove he acted intentionally, knowingly, or recklessly. *See id.* A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2003). A person acts knowingly with respect to a result of his conduct when he is aware that it is reasonably certain to cause the result. *Id*. § 6.03(b). A person acts recklessly with respect to a result of his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c).

Intent is a fact issue for the jury. *Barcenes v. State*, 940 S.W.2d 739, 744 (Tex. App.—San Antonio 1997, pet. ref'd). Proof of a culpable mental state generally relies upon circumstantial evidence. *Id*. Intent can be inferred from the acts, words, and conduct of the defendant, and is an issue to be resolved by the trier of fact based on all of the facts and surrounding circumstances. *Id*. at 744-45. The trier of fact may consider the acts and words of

the defendant, the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. *Nickerson v. State*, 69 S.W.3d 661, 667 (Tex. App.—Waco 2002, pet. ref'd).

Hernandez's claim that he did not intend to cause serious bodily injury to Light, or that he was not reasonably certain his actions would cause Light serious bodily injury, or that he did not consciously disregard a substantial and unjustifiable risk that Light would suffer serious bodily injury is inconsistent with his conduct. The evidence, when considered in the light most favorable to the jury's verdict, shows that after his initial confrontation with Light, during which Hernandez became enraged, Hernandez left and returned with his father. Based on Light's testimony, the jury could have believed the men were attempting to sneak up on Light when they returned, and only approached in the open when they were spotted by Light. While Hernandez's father was engaging Light in conversation, Hernandez blindsided Light with a fist to the face, knocking Light ten feet down the sidewalk. Thereafter, before Light was able to regain his footing, and with Big Nick preventing Light from getting up, Hernandez kicked Light in the face. In fact, according to Light's girlfriend, Hernandez stepped back as if he was going to "kick a football" before he kicked Light in the face. After these two blows, Hernandez wanted to continue the fight, and it was only the intervention of Light's girlfriend that stopped the attack. Light suffered multiple fractures and continues to suffer the effects of the assault. Threatening Light, attempting to sneak up on Light, blindsiding Light with a fist to the face, and kicking Light in the face as if he were a football while Light was completely defenseless and being held down is sufficient evidence to allow the jury to infer Hernandez acted intentionally, knowingly, or recklessly with respect to causing Light serious bodily injury. We therefore overrule this portion of Hernandez's sufficiency challenge.

## CONCLUSION

Based on the foregoing, we overrule Hernandez's challenge to the sufficiency of the evidence, and we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish