

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00645-CR

Kayela Paige **MCCLINTICK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR1185C
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:　Luz Elena D. Chapa, Justice

Sitting:　　Sandee Bryan Marion, Chief Justice
　　　　　Rebeca C. Martinez, Justice
　　　　　Luz Elena D. Chapa, Justice

Delivered and Filed:　July 22, 2015

AFFIRMED

Kayela McClintick appeals her conviction for causing serious bodily injury to her child, J.C. Her sole issue is that the evidence is legally insufficient to support a finding that she caused serious bodily injury to J.C. We affirm.

### PROCEDURAL BACKGROUND

Child Protective Services investigated a report of child abuse and went to a home in San Antonio and found McClintick's two children, J.C. and J.M. The CPS investigators observed there

was no food for the children. J.C. and J.M. were taken to an area hospital where they were both treated. J.M. was released the same night, but J.C. was admitted and discharged five days later.

McClintick was indicted for two felony offenses. The first count was for causing serious bodily injury to J.C., and the second count was for causing bodily injury to J.M. Following a jury trial, McClintick was convicted of both counts and sentenced to twenty years' confinement on the first count and five years' confinement on the second. McClintick appeals her conviction for the first count only.

## LEGAL SUFFICIENCY

McClintick argues the evidence is legally insufficient to support a finding that she caused serious bodily injury to J.C. In reviewing the legal sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence "in the light most favorable to the verdict." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally," and we must "defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotation marks and citations omitted). A jury may "draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

"A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04 (West Supp. 2014). McClintick does not

challenge that she caused injury to J.C., but she argues the evidence is legally insufficient to support the injury was a "serious bodily injury."

"'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2014). The Penal Code does not define "protracted." "[T]erms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance." *Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000). "Protracted" can be understood as "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (citing Burton, *Legal Thesaurus* 418 (1980 ed.)). Therefore, the "serious bodily injury" element may be satisfied if the evidence permitted a rational jury to find J.C. suffered an ongoing loss or impairment of the function of any bodily member or organ. *See id.*

Dr. Lukefahr, an expert witness for the State, testified he examined J.C. on July 16, 2012, which was three days after J.C. had been admitted to the hospital. Dr. Lukefahr stated he diagnosed J.C. with starvation. He testified she appeared very emaciated. In other words, she had no body fat.

> You could see her ribs very clearly, her neck muscles. Her eyes were very gaunt appearing. She had a very protuberant abdomen. Her abdomen really stuck out. Her extremities, her arms and legs were very thin. She had very, kind of, sparse abnormally thin hair and had an unusual reddish color to it. And one of the most striking things also was that she had such a small amount of body fat that her skin literally hung off of her buttocks and her genital area. . . . [T]he most significant thing was that her liver was significantly enlarged."

He explained this was "commonly seen in severe starvation where someone's had their nutritional intake severely restricted for a period of time and the body reacts to that in a number of ways, and

one of them is that frequently the liver will become markedly enlarged." He stated the edge of J.C.'s liver "was palpably not where it was supposed to be." Dr. Lukefahr explained this would have occurred "over a period of time, probably a period of weeks or months." Dr. Lukefahr further explained the effect starvation had on J.C.'s muscles. "She also was markedly weak. . . . [H]er muscles had became [sic] so weak that it was very difficult for her even to walk." He testified, "Someone has to be undernourished for a pretty significant period of time to get the profound weakness that she had in the hospital."

McClintick argues Dr. Lukefahr's testimony does not support J.C. suffered from "the *protracted* loss or impairment of any bodily member or organ." We disagree. Dr. Lukefahr opined that the malnourishment occurred over a significant period of time, probably a period of weeks or months, which caused J.C.'s liver to become enlarged and caused her muscles to become so weak it was difficult for her to walk. The jury could have rationally inferred from Dr. Lukefahr's testimony that the loss or impairment to the function of J.M.'s muscles and other organs resulting from starvation had been ongoing. Therefore, we hold the evidence is legally sufficient to support the jury's finding that McClintick caused serious bodily injury to J.C.

CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish