**MODIFY, REFORM, and AFFIRM; Opinion Filed October 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00852-CR

### DWAYNE BURKS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 3
### Dallas County, Texas
### Trial Court Cause No. F12-71706-J

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice Fillmore

Dwayne Burks was charged by indictment with aggravated assault with a deadly weapon involving family violence. The indictment also contained two enhancement paragraphs based on Burks's prior felony convictions for aggravated assault with a deadly weapon and possession of cocaine, with intent to deliver. After Burks waived his right to a jury trial, the trial court found Burks guilty of the lesser included offense of aggravated assault with serious bodily injury involving family violence, found the two enhancements paragraphs to be true, and sentenced Burks to twenty-five years' imprisonment. In four issues, Burks contends the evidence is insufficient to prove the injuries suffered by the complainant constituted serious bodily injury, the trial court erred by admitting a lay opinion of Burks's future dangerousness, and the judgment should be modified to accurately reflect the proceedings in the trial court. As modified, we affirm the trial court's judgment.

## Background

On August 9, 2012, Burks and Barbara Humble were in a dating relationship. Humble, who lived in Fort Worth, came to Dallas for a funeral and went to her aunt's house. Burks was living at his niece's house, which was on the same street as Humble's aunt's house, and came to see Humble. Humble admitted she smoked marijuana and drank beer at her aunt's house and was intoxicated.

According to Humble, she received a telephone call from her doctor about the results of a medical test. Burks took her telephone away from her, went outside, and "went through" her phone. After he came back inside, he threw the phone at her, started calling her names, and accused her of lying to him about talking to other men. Humble testified Burks started "fighting" her at her aunt's house. Humble and Burks then went to Burks's niece's house to get a beer, and he started "fighting" her again. She asked Burks to go into the bathroom and talk to her because she did not want to fight. According to Humble, Burks "head butted" her and starting fighting her "like she was a man." He also hit her in the face with his hand and pulled out some of her hair. Humble denied hitting Burks, but admitted she "cussed him and called him a coward."

When Humble returned to her aunt's house, her aunt and cousins tried to wash her face because she had so much blood on her. Someone called the police and an ambulance. Although Humble refused to be taken to the hospital in the ambulance, she later went to the hospital for treatment. Humble's medical records indicate she had missing hair, a laceration on her nose that required stiches to repair, and superficial lacerations on her lips and a CT scan showed she had a broken jaw. The CT scan also showed that Humble had unerupted lateral incisors. Humble testified she also had a black eye. The hospital referred Humble to a maxillofacial surgeon for follow-up care.

Humble testified her jaw was subsequently wired shut for two months. At the time of trial, ten months after the altercation, Humble was still required to eat soft food and was unable to "chew too much on her back teeth" because they have not healed. She was also unable to open and close her mouth the way she could before she was injured. Although the doctor thought her jaw would eventually heal, Humble was still putting warm towels on her jaw three times a day.

Humble testified a number of her teeth need to be replaced because "where my teeth go, it's broken, and they can't do nothing about it." She was waiting for the surgery to remove her teeth and install implants to be scheduled. According to Humble, the surgery is necessary because of the injury from the altercation with Burks. She also has a scar on her nose from the altercation.

Christine Carter, Humble's cousin, testified that Humble and Burks were in her backyard. Although Carter did not see what happened, Humble got hurt in the backyard and "had a little gash." Humble and Burks then left. Carter testified that, when Humble returned to her house, Humble's eye was "real closed and her mouth was all bloody." Carter could tell that Humble was intoxicated. According to Carter, Humble has a "little" temper when she is intoxicated and, when Humble becomes angry, "she do hit."

Burks testified that, on August 9, 2012, Humble called him when she got to Dallas. He went to Humble's cousin's house to talk to her. They drank beer, and Humble smoked some marijuana. At approximately 3:00 p.m., Humble and Burks went into the backyard, and Humble got a telephone call. Burks answered the phone and a man asked for Humble and said he was Humble's friend from the apartments. When Burks handed Humble the telephone, she said the call was not for her and the caller had dialed the wrong number.

According to Burks, he responded "okay," and Humble hit him on the shoulder. He then said, "Girl, quit playing. If that's what you want, that's what you want." Humble then hit him "across the head." He pushed Humble, and she hit her head on the edge of the garage and hurt her nose. They talked, and Humble told him she was sorry. He then went to his niece's house.

At approximately 10:30 p.m., Humble came to Burks's niece's house with her grandson. He took Humble's grandson into the house and started feeding him. Humble came into the house and kept arguing with him and pushing on him. She insisted that he go into the bathroom with her. Burks testified Humble hit him in the bathroom and he grabbed her hair. She ran out of the bathroom and threw something at him. They went outside, and she tried to hit him again. He then pushed her and she fell off the porch, hitting her face on the ground. Burks believes Humble was injured in the fall against the garage or in the fall from the porch. Burks testified Humble had attacked him before, was hitting him that day, and he simply defended himself.

Burks admitted he had an "extensive criminal history" and had been convicted of the two offenses alleged in the enhancement paragraphs of the indictment as well as of other crimes. The trial court found Burks guilty of aggravated assault with serious bodily injury involving family violence, found the two alleged enhancements were true, and sentenced Burks to twenty-five years' imprisonment.

## Sufficiency of the Evidence

In his first issue, Burks asserts there is insufficient evidence to support the conviction because the State failed to establish that Humble suffered serious bodily injury. Burks specifically argues there is insufficient evidence that any of Humble's injuries caused either serious permanent disfigurement or the protracted loss or impairment of the function of any bodily member or organ.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As the fact finder, the trial court is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the trial court's determinations of credibility, and may not substitute our judgment for that of the trial court. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

As charged in this case, a person commits aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (West 2011 & Supp. 2014). "Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL

CODE ANN. § 1.07(a)(46) (West Supp. 2014). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). The difference between bodily injury and serious bodily injury is one of degree. *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987). In assessing the sufficiency of the evidence to establish serious bodily injury, the question is the degree of risk of death that the injury caused, or the disfiguring or impairing quality of the injury, "as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (citations omitted).

For there to be protracted impairment such that a finding of serious bodily injury is proper, an organ or bodily member must lose some function. *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.). The loss of function, however, need only be protracted, not permanent. *See Williams v. State*, 575 S.W.2d 30, 33 (Tex. Crim. App. [Panel Op.] 1979) (loss of lifting power in arm for three months constituted serious bodily injury); *Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd) (fractured vertebrae requiring six weeks of bed rest and no heavy work for three months constituted serious bodily injury); *but see Moore*, 739 S.W.2d at 351–52 (evidence of injured nose and back that required a few hours in hospital and rest for a week was insufficient to establish serious bodily injury); *Hernandez*, 946 S.W.2d at 113 (knife wound to victim's chest, including laceration of liver, without evidence of impairment of bodily member or organ, was not sufficient evidence of serious bodily injury). To be considered "protracted," an injury should be "continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore*, 739 S.W.2d at 352. The injured party is qualified to offer an opinion as to the severity of the injuries, and expert testimony is not required when the injury and its effects are obvious. *See Hart v. State*, 581

S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979); *Coshatt*, 744 S.W.2d at 636; *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—Waco 2013, no pet.).

Humble testified her fractured jaw was wired shut for two months. Although Burks argues this two-month period is insufficient to show protracted impairment or loss of function, Humble also testified that, almost ten months after the altercation with Burks, she still had pain in her jaw, was placing warm towels on her jaw three times a day, was unable to open her jaw to the extent she was able to before the fracture, and was unable to eat the types of foods she ate before the injury. Humble also testified that, in the assault, a number of her teeth were broken "where they went in" and she still needed surgery to remove and replace these teeth. This was sufficient evidence for a rational fact finder to conclude the bodily injury Humble suffered in the assault involved the protracted loss or impairment of the function of a bodily member. *See Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. [ Panel Op.] 1980) (concluding broken and deformed nose was serious bodily injury on day it was inflicted even though effects were later ameliorated by medical treatment); *Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref'd) (broken leg, requiring one week of traction and cast covering lower body for six weeks, that would, if untreated, result in deformity that would impair function of leg was serious bodily injury); *Allen v. State*, 736 S.W.2d 225, 227 (Tex. App.—Corpus Christi 1987, pet. ref'd) (complainant had protracted impairment of function of bodily member where she suffered broken finger and still had some dysfunction in finger for more than three months after assault).[1] We resolve Burks's first issue against him.

---

[1] *See also Tucker v. State*, No. 05-01-01899-CR, 2002 WL 32397713, at *1–2 (Tex. App.—Dallas Oct. 30, 2002, no pet.) (not designated for publication ) (evidence complainant suffered a fractured jaw, was restricted to a liquid diet for three months, had pain for month following assault and that fracture constituted a protracted loss of use of jaw was sufficient to support finding of serious bodily injury); *Williams v. State*, No. 06-10-00156-CR, 2011 WL 808957, at *2–3 (Tex. App.—Texarkana Mar. 9, 2011, no pet.) (mem. op., not designated for publication) (sufficient evidence to support finding of serious bodily injury based on testimony complainant's broken jaw was wired shut, he was on liquid diet for four to five months and, a year after the assault, he was still unable to eat hard foods).

## Lay Opinion

In his second issue, Burks contends the trial court erred by admitting an improper lay opinion of his future dangerousness. During Humble's testimony in the punishment phase of the trial, the following exchange occurred:

Prosecutor: What do you think happens when a defendant gets out of jail?

Defense counsel: I'd have to object. That's gonna call for speculation on her part.

The Court: Objection overruled.

Defense counsel: As to this defendant?

The Court: I'm sorry?

Defense counsel: As to this defendant? What's he gonna do when he gets out of jail?

Prosecutor: I think my question was what she thought, your Honor, it's her state of mind.

The Court: Okay. Objection overruled. Go ahead.

Humble: If he get out, he probably is gonna come back and kill me because I testified against him.

Defense counsel: Object to that. There is no evidence whatsoever –

The Court: Objection overruled. Objection overruled. Go ahead.

Prosecutor: Are you scared of what could happen to you when the defendant gets out of the penitentiary?

Humble: Yes, I am.

Prosecutor: And what are you asking the judge to do in this case?

Humble: Put him away for a long time where he won't fight no more womens [sic] again.

A complaint on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see also* TEX. R. APP. P. 33.1(a) (preservation of

complaint for appellate review requires complaint to trial court by timely request, objection, or motion with sufficient specificity to make trial court aware of complaint, unless specific grounds were apparent from context). Burks argues on appeal that Humble's testimony he would probably kill her when he was released from prison was a lay opinion as to Burks's future dangerousness that was not supported by sufficient personal knowledge. However, at trial, Burks objected that the question, "What do you think happens when a defendant gets out of jail?" required Humble to speculate. After the trial court overruled the objection, Burks successfully narrowed the scope of the question from what Humble thought would happen when "a defendant" is released from jail to what Humble thought would happen when Burks got out of prison. He then objected there was no evidence to support her statement that he would attempt to harm her when he was released. Burks did not object at trial that Humble gave an improper lay opinion on his future dangerousness. Accordingly, Burks forfeited his complaint on appeal by not properly preserving error at trial. *See* TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 340 (appellant failed to preserve complaint for review when trial objection did not comport with issue raised on appeal).

Further, Burks has failed to demonstrate any harm from the admission of the testimony. *See Esquivel v. State*, 595 S.W.2d 516, 529 (Tex. Crim. App. 1980) (judgment will not be reversed based on admission of evidence that did not injure defendant). The two enhancement paragraphs in the indictment alleged Burks had been convicted of aggravated assault with a deadly weapon in 2005 and of possession of cocaine, with intent to deliver, in 1992. Burks testified he had been convicted of both of those crimes. Further, the trial court admitted into evidence, without objection from Burks, certified copies of the judgments from Burks's fifteen prior convictions, including the two convictions alleged in the indictment for enhancement purposes. These judgments established the 1992 conviction was a first degree felony and the

2005 conviction was a second degree felony and was based on an offense that was committed in 2004.

As an habitual offender, Burks was subject to be sentenced to imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years, TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). He was not eligible for either community supervision or deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 3, 5 (West Supp. 2013). The trial court sentenced Burks to twenty-five years' imprisonment, the minimum sentence he was eligible to receive and, therefore, we cannot conclude he was harmed by Humble's testimony. *See Nickerson v. State*, 660 S.W.2d 825, 827 (Tex. Crim. App. 1983) (drugs found in plain view led to inventory search of vehicle, resulting in discovery of more drugs in trunk; in light of fact defendant received minimum sentence, admission of evidence of drugs in trunk did not injure him). We resolve Burks's second issue against him.

**Modification of Judgment**

In his third and fourth issues, Burks asserts the judgment should be modified to delete the deadly weapon finding, to reflect the correct name and degree of felony of the offense for which he was convicted, to reflect he pleaded not true to both enhancement paragraphs, and to reflect the trial court found the alleged enhancements to be true.

Burks was indicted for aggravated assault with a deadly weapon involving family violence. After he was arraigned, Burks pleaded not guilty to the charged offense and not true to the two alleged enhancement paragraphs in the indictment. The trial court found Burks guilty of the lesser included offense of aggravated assault with serious bodily injury involving family violence and found the two alleged enhancement paragraphs to be true. The trial court's judgment, however, incorrectly reflects that Burks was convicted of "Aggravated Assault/Serious Bodily Injury Deadly Weapon Family Violence," a first degree felony; contains

–10–

an affirmative deadly weapon finding; states both the plea and the finding on the first enhancement paragraph are "N/A"; and states Burks pleaded "True" to the second enhancement paragraph. The trial court subsequently signed an order "Nunc Pro Tunc" stating the judgment should be amended to reflect Burks was convicted of the offense "Aggravated Assault Serious Bodily Injury Family Violence." However, the record does not contain a judgment nunc pro tunc.

When, as here, the record provides the necessary information to correct inaccuracies in a judgment, this Court has the power to modify an incorrect judgment to make the record speak the truth. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We resolve Burks's third and fourth issues in his favor. In conjunction with the trial court's order nunc pro tunc, we modify the trial court's judgment to reflect Burks was convicted of "Aggravated Assault Serious Bodily Injury Family Violence," a second degree felony; the trial court did not make an affirmative finding that a deadly weapon was used; Burks pleaded "not true" to both alleged enhancement paragraphs; and the trial court found both alleged enhancement paragraphs to be true.

As modified, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130852F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DWAYNE BURKS, Appellant

No. 05-13-00852-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas,
Trial Court Cause No. F12-71706-J.
Opinion delivered by Justice Fillmore, Justices FitzGerald and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the trial court's judgment titled "Offense for which Defendant Convicted" is modified to state "Aggravated Assault Serious Bodily Injury Family Violence."

The section of the trial court's judgment titled "Degree of Offense" is modified to state "2nd Degree Felony."

The section of the trial court's judgment titled "Findings on Deadly Weapon" is modified to state "N/A."

The section of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" is modified to state "Not True."

The section of the trial court's judgment titled "Findings on 1st Enhancement Paragraph" is modified to state "True."

The section of the trial court's judgment titled "Plea to 2nd Enhancement/Habitual Paragraph" is modified to state "Not True."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 14th day of October, 2014.

–12–